# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| CARMEN SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>THE UNITED STATES CENSUS BUREAU; OFFICE OF PERSONNEL MANAGEMENT; and METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Defendants. | No. 20-CV-2059-CJW-MAR<br><br>**MEMORANDUM OPINION & ORDER** |

_____

## I.    INTRODUCTION

This matter is before the Court on the United States Census Bureau (the "Census Bureau") and the Office of Personnel Management's ("OPM") (collectively, the "federal defendants") Motion to Dismiss filed on October 23, 2020. (Doc. 14). After receiving an extension of time (Doc. 17), plaintiff timely filed her pro se resistance on December 4, 2020. (Doc. 22). On December 10, 2020, the federal defendants timely filed a reply. (Doc. 23). For the following reasons, the Court **grants** the federal defendants' motion and **directs** plaintiff and MetLife to each file a brief within 30 days addressing this Court's subject matter jurisdiction over the remaining claims.

## II.    RELEVANT BACKGROUND

The following facts are alleged in plaintiff's complaint. (Doc. 1). Plaintiff's husband Richard Smith ("Richard") worked for the Census Bureau until his retirement in 2008. (*Id.*, at 2–3). Plaintiff alleges that Richard received multiple statements from OPM explaining that he was eligible for life insurance benefits through defendant

Metropolitan Life Insurance Company ("MetLife")[1] under the Federal Employee Group Life Insurance Act ("FEGLIA") because of his work with the Census Bureau. (*Id.*, at 2–4). The statements allegedly represented that Richard had a total of $60,000 in life insurance coverage, comprised of $10,000 in Basic Life coverage, $10,000 in Option A coverage, and $40,000 in Option B coverage. (*Id.*, at 4). Richard paid premiums on the full amount of coverage. (*Id.*, at 3–4). Richard passed away in late 2018. (*Id.*, at 3).

On December 26, 2018, plaintiff submitted a claim under Richard's life insurance policy to OPM. (*Id.*, at 4). On May 21, 2019, MetLife, without explanation, sent plaintiff a check for only $25,051.03, not the $60,000 as plaintiff expected, because it did not pay out the full amount of Option B coverage. (*Id.*). On July 18, 2019, plaintiff asked OPM why she did not receive the full $40,000 in Option B coverage. (*Id.*, at 5). On August 19, 2019, plaintiff received a check from OPM for $2,750.95. (*Id.*). MetLife and OPM each later clarified in separate letters that Richard was only eligible for $5,000 in Option B coverage, not $40,000. (*Id.*). Thus, the first check was the proper amount plaintiff was to receive under the policy and the second check reimbursed plaintiff for Richard's overpayment on his premiums. (*Id.*). At plaintiff's request, OPM reviewed this matter twice but did not change its conclusion that the payments were correct. (*Id.*).

On August 18, 2020, plaintiff filed her complaint against defendants in this Court. (*Id.*, at 1). Plaintiff asserted two claims for relief against all defendants. First, plaintiff asserted that "[d]efendants have breached their promise and duty under federal law," to pay out the full $60,000 on Richard's life insurance policy. (*Id.*, at 6). Second, plaintiff asserted that "[a]lternatively, Defendants are equitably estopped and barred by laches from denying the full life insurance claim[.]" (*Id.*, at 7). On October 7, 2020, MetLife filed its answer. (Doc. 10). On October 23, 2020, the federal defendants filed their

---

[1] MetLife does not join in the federal defendants' Motion to Dismiss. *See* (Doc. 14).

Motion to Dismiss now before the Court, arguing that dismissal is required under Federal Rule of Civil Procedure 12(b)(1) due to a lack of subject matter jurisdiction. (Doc. 14, at 1–2).

### III. APPLICABLE LAW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Federal courts may only hear cases that fall within their limited subject matter jurisdiction. *N. Cent. F.S. v. Brown*, 951 F. Supp. 1383, 1391–92 (N.D. Iowa 1996). Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss based on a "lack of subject-matter jurisdiction." Subject-matter jurisdiction is determined from the face of the complaint. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). A defendant can either attack the complaint's asserted jurisdictional basis on its face or the factual basis underlying the court's jurisdiction. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). One type of federal subject matter jurisdiction is federal question under Title 28, United States Code, Section 1331. This section grants federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

If a federal district court has original jurisdiction over a civil action, the court also has supplemental jurisdiction over claims that are so related to the claims at issue "that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To be considered

part of the same case or controversy, the claims "must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). The claims derive from the same common nucleus if they "are such that [they] would ordinarily be expected to [be tried together] in one judicial proceeding." *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs*, 383 U.S. at 725).

### IV. DISCUSSION

A federal court does not have jurisdiction over a suit against the United States absent a waiver of its sovereign immunity. *Jones v. United States*, 255 F.3d 507, 511 (8th Cir. 2001); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996). Only Congress has the authority to waive the government's sovereign immunity and such waivers are strictly construed. *St. Tammany Par. v. FEMA*, 556 F.3d 307, 315–16 (5th Cir. 2009). A plaintiff suing the United States bears the burden of proving jurisdiction and, thus, must show some unequivocal waiver of sovereign immunity by Congress. *Id.* at 315.

Here, the federal defendants are entities of the United States government and, thus, a waiver of sovereign immunity must apply in order to enable this Court's jurisdiction. *See, e.g.*, *In re U.S. OPM Data Sec. Breach Litig.*, 928 F.3d 42, 61 (D.C. Cir. 2019); *O'Connor v. U.S. Census Bureau*, No. 3:10CV521-HEH, 2010 WL 11562078, at *1 (E.D. Va. Sept. 28, 2010). Plaintiff asserts that two different sovereign immunity waivers apply which enable this Court's jurisdiction: (1) Title 28, United States Code, Section 1346(b) of the Federal Tort Claims Act ("FTCA"); and (2) Title 5, United States Code, Section 8715 of FEGLIA. (Doc. 1, at 1–2); *see also* (Docs.14-1, at 7, 9; 22, at 4, 9).[2] The Court will address each basis in turn.

---

[2] The federal defendants also argue that jurisdiction does not exist under the Tucker Act or the Little Tucker Act. (Doc. 14-1, at 6, 8–9); *see also* 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1491. Because plaintiff does not assert these jurisdictional bases, the Court need not consider them. In short, however, neither basis offers jurisdiction here. Because plaintiff seeks damages in excess

4

### A.     *Jurisdiction under FTCA*

Section 1346(b) of the FTCA waives sovereign immunity for tort claims against the United States: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of . . . [their] employment[.]" *See also* 28 U.S.C. § 2674. The FTCA, however, has exemptions for which the federal government has not waived its tort liability. *See* 28 U.S.C. § 2680. For example, as it pertains to the claims here, Section 2680(h) specifies that sovereign immunity is not waived as to "[a]ny claim arising out of . . . misrepresentation[.]"

The federal defendants argue that the FTCA's sovereign immunity waiver does not apply here. (Doc. 14-1, at 7). According to the federal defendants, plaintiff does not allege that she was legally entitled by some statute or regulation to the full $40,000 in Option B coverage. (*Id.*). Rather, plaintiff's claims revolve around an alleged misrepresentation, i.e. that government employees misrepresented to Richard that he was eligible for an amount of coverage that he was not in fact eligible for and that plaintiff and Richard relied on that misrepresentation to their detriment. (*Id.*). Thus, the federal defendants conclude plaintiff's claims fall squarely within Section 2680(h)'s waiver exception for claims arising out of a misrepresentation. (*Id.*).

Plaintiff does not dispute, and perhaps even concedes, that her claims rest upon a misrepresentation. (Doc. 22, at 3, 4, 7) (noting that "§ 2680(h) is an exception that limits [plaintiff's] claim based on misrepresentation," that the federal defendants' argument "has merit," and that "[t]his cause of action may be barred by § 2680(h)"). Instead, plaintiff argues that application of Section 2680(h)'s waiver exception here is inconsistent

---

of $10,000, the Little Tucker Act does not apply. *See* (Doc. 1, at 7). Even if the Tucker Act applied, jurisdiction is vested in the United States Court of Federal Claims, not this Court.

with the broader purposes of FEGLIA. (*Id*, at 6). Alternatively, plaintiff argues that her claims do not rest on the misrepresentation of information but, rather, the negligent performance of a governmental task. (*Id.*, at 7). Specifically, plaintiff argues that the government was negligent in supervising the FEGLIA process. (*Id.*, at 3, 8).

As to plaintiff's first argument, the Court has no authority to carve out an exception for misrepresentations based on the broader principles of FEGLIA when Congress explicitly withheld its waiver of sovereign immunity under the FTCA for claims arising from a misrepresentation. *See St. Tammany Par.*, 556 F.3d at 315–16 ("Congress's waiver of [sovereign immunity] must be unequivocally expressed in statutory text and will not be implied[.]") (citation and internal quotation marks omitted). Moreover, Section 2680(h)'s exception for misrepresentation has been cited in other FEGLIA cases. *See Metro. Life Ins. Co. v. Atkins*, 225 F.3d 510, 512–13 (5th Cir. 2000) (considering the misrepresentation exception in a FEGLIA case but ultimately finding the claim at issue did not center on a misrepresentation). In sum, the Court has no basis to conclude that the principles of FEGLIA are inconsistent with application of Section 2680(h) and, even if it found as much, cannot create such an exception by implication alone.

The Court also finds plaintiff's second argument unavailing. In determining whether the misrepresentation exception applies, the Court must look at the "crux" of what is alleged. *Farmers State Sav. Bank v. Farmers Home Admin.*, 891 F.2d 200, 202 (8th Cir. 1989). "[C]auses of action distinct from those excepted under section 2680(h) are nevertheless barred when the underlying government conduct 'essential' to the plaintiff's claim can be fairly read to 'arise out of' conduct that would establish an excepted cause of action." *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993). "[A] court must look to the essential act that spawned the damages to determine whether the misrepresentation exception bars the claim." *Atkins*, 225 F.3d at 512 (citation and internal quotation marks omitted). If the crux of the injury arises from the "transmission

6

of misinformation," i.e. the misrepresentation was a necessary link in the causal chain, then a plaintiff's claim is properly barred under Section 2680(h). *Id.* If, however, the crux of the plaintiff's claim is based on the negligent performance of an operational task by a government agent, the misrepresentation exception does not apply. *Id.* at 512–13.

*Metropolitan Life Insurance Co. v. Atkins*, 225 F.3d 510 (5th Cir. 2000) illustrates the distinction between negligent performance of an operational task and the transmission of misinformation. There, the Fifth Circuit Court of Appeals reversed the district court's finding that it lacked jurisdiction due to Section 2680(h)'s misrepresentation exception. *Id.* at 512–13. The court found that the crux of the plaintiff's claim was that a government employee either negligently failed to discover that the decedent had improperly signed a necessary FEGLIA form or negligently failed to retain a copy of the decedent's properly signed form. *Id.* Thus, any misinformation involved was peripheral to the central injury, i.e. the employee's negligent performance of a task. *Id.*

Here, there is no specific negligent act. Rather, plaintiff's claims revolve around the transmission of misinformation; Richard was told he was eligible for $40,000 in Option B coverage when he was in fact only eligible for $5,000. Plaintiff's belated reinterpretation of her claims as concerning the government's failure to supervise is unavailing. Plaintiff's complaint does not discuss such supervision, its failures, or how such failures caused her injury here. Even assuming some supervisory error occurred, it is one step removed from the central harm at issue; the transmission of misinformation about how much Option B coverage Richard was eligible to receive.[3]

---

[3] Plaintiff encourages the Court to rely on *Block v. Neal*, 460 U.S. 289 (1983). *See, e.g.*, (Doc. 22, at 7–9). *Neal* concerned the Farmers Home Administration's negligent inspection of and supervision over a home construction project. 460 U.S. at 290–91. Thus, the core of the plaintiff's claim there was negligent supervision and inspection and any "misstatements" by government officials were "not essential" to her claim. *Id.* at 297. Again, the Court finds here that the crux of plaintiff's claims is one of misrepresentation and centrally relies upon the transmission of misinformation, not a failure to supervise.

7

After considering the facts in the light most favorable to plaintiff, the Court finds that the claims at issue, at their core, rest on a misrepresentation, not a failure to perform a task. Thus, Section 2680(h)'s exception for misrepresentation claims applies and the FTCA's sovereign immunity waiver does not apply here. In light of this, plaintiff cannot rely on the FTCA as a jurisdictional basis for her claims.

### B. *Jurisdiction under FEGLIA*

Title 5, United States Code, Section 8715 provides that "[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on this chapter." Section 8715 has been widely interpreted to only afford relief when the claim at issue "involve[s] some right created by [FEGLIA] and a breach by the Government of some duty with respect thereto." *See, e.g.*, *Lewis v. Merit Sys. Prot. Bd.*, 301 F.3d 1352, 1353 (Fed. Cir. 2002). In other words, the United States' waiver of sovereign immunity under FEGLIA only extends to lawsuits based on the "breach of [a] legal duty owed by it under FEGLIA." *Atkins*, 225 F.3d at 513. Most courts have held "that the only legal duty imposed on the United States under FEGLIA is to ensure that the correct . . . policy is negotiated and issued." *See, e.g.*, *Graber v. Metro. Life Ins. Co.*, 855 F. Supp. 2d 673, 677 (N.D. Ohio 2012); *see also Frerichs v. United States*, No. 05 C 5900, 2006 WL 200812, at *2 (N.D. Ill. Jan. 23, 2006) ("The United States' role is limited to negotiation and procuring of a policy of group life insurance for its employees[.]") (citation, internal quotation marks, and alteration omitted). Thus, "[t]he United States is only liable if it fails in that role to cause the issuance of the insurance contract in the proper amount." *Jacobs v. United States*, 794 F. Supp. 509, 511 (S.D.N.Y. 1992); *see also Grove v. United States*, 170 F. Supp. 176, 177 (E.D. Va. 1959) (holding that the United States was only liable if it "failed to cause the issuance of the insurance contract in the proper amount").

8

The federal defendants argue that plaintiff does not assert that she is legally entitled to $40,000 in Option B coverage under FEGLIA. (Doc. 14-1, at 10). Rather, plaintiff's claims focus on her reliance on the government's misrepresentation and the government's subsequent failure to pay out the full coverage even though plaintiff was not legally entitled to it. (*Id.*, at 11). Thus, the federal defendants conclude that plaintiff's claims do not arise under FEGLIA and are not within the scope of Section 8715's waiver of sovereign immunity.

Plaintiff argues that the government breached a legal duty under FEGLIA and that her claims thus fall within Section 8715's waiver. (Doc. 22, at 9–12). Specifically, plaintiff cites Title 5, United States Code, Section 8703, which requires OPM to give each insured "a certificate setting forth the benefits to which [the insured] is entitled, to whom the benefits are payable, to whom the claims shall be submitted, and summarizing the provisions of the policy principally affecting [the insured]." (*Id.*, at 9–10); *see also* 5 U.S.C. § 8703. Plaintiff alleges that OPM breached its duty when it certified an insurance policy to which Richard was not entitled. (Doc. 22, at 10).

The Court is not aware of any case in any court holding that Section 8703 creates a legal duty on the part of the United States under FEGLIA the breach of which is actionable. Moreover, plaintiff does not appear to claim that Richard never received a certificate, but only that it incorrectly stated the benefits to which Richard was entitled. Again, this claim amounts to a misrepresentation. The core of the claim concerns the misrepresentation of the amount of coverage, not any error about the issuance of a certificate. There is no explicit provision of FEGLIA that grants a plaintiff the right to recover for a misrepresentation. To the contrary, courts have broadly held that the United States' only duty is to negotiate the policy on behalf of its employees and issue the correct amount under the policy when claimed. Here, there is no dispute that the correct amount was ultimately issued.

9

Plaintiff also cites Title 5, Code of Federal Regulations, Chapter 870.104(b) as an incontestability clause which prevents the federal defendants from denying coverage in the amount originally represented, even if that amount was in error. (Doc. 22, at 11–12). Section 870.104(a)–(b) states:

> (a) If an individual erroneously becomes insured, the coverage will remain in effect if at least 2 years pass before the error is discovered, and if the individual has paid applicable premiums during that time. This applies to errors discovered on or after October 30, 1998, and applies only to employees, not retirees or compensationers.
> (b) If an employee is erroneously allowed to continue insurance into retirement or while receiving compensation, the coverage will remain in effect if at least 2 years pass before the error is discovered, and if the annuitant or compensationer has paid applicable premiums during that time. This applies to such errors discovered on or after October 30, 1998.

First, this section appears to concern persons who erroneously became insured, not persons who are in fact insured but were erroneously told the incorrect amount of their coverage. Second, even if Section 870.104(b) applied and entitled plaintiff to the amount of coverage she asserts, Title 5, Code of Federal Regulations, Section 870.102 states that "[a]ny court action to obtain money due from this insurance policy must be taken against the company that issues the policy." Thus, plaintiff's claims for relief under this provision would be against MetLife, not the federal defendants.

Thus, the Court finds there is no explicit waiver of sovereign immunity under FEGLIA that applies here. In light of this, plaintiff cannot rely on the FEGLIA as a jurisdictional basis for her claims.

### C. *Estoppel Claim*

In light of the above analysis, plaintiff has failed to identify a waiver of sovereign immunity that would give this Court jurisdiction over her first claim for relief alleging some breach of federal law because this claim rests on a misrepresentation. *See* (Doc. 1, at 6). This analysis arguably also encompasses plaintiff's second claim to the extent

10

Case 6:20-cv-02059-CJW-MAR    Document 25    Filed 01/08/21    Page 10 of 12

it rests on the same misrepresentation. (*Id.*, at 7). This second claim, however, can also be read as an equitable claim, i.e. that defendants should be estopped from denying the full amount of coverage because Richard paid premiums on the full amount and plaintiff justifiably relied on that amount.

Even if the Court construed this claim as an equitable cause of action focusing on the payment or premiums and not the misrepresentation itself, the claim still fails. There is still no identifiable waiver of sovereign immunity that applies to this type of claim. Further, courts have held the erroneous payment of premiums cannot expand FEGLIA coverage. *See, e.g.*, *Chanda v. D.C.*, Civ. No. 90-2187, 1992 WL 212373, at *6 (D.D.C. Aug. 20, 1992) ("[T]he fact that the premiums were fully funded by the decedent does not bring this case outside the scope of [case law] holding that estoppel cannot be used against the government in a manner that results in payments not authorized by statute."); *Chrobak v. Metro. Life Ins. Co.*, 517 F.2d 883, 887 (7th Cir. 1975) (holding that coverage under FEGLIA could not be expanded by erroneous premium payments). Simple mistakes by government officials generally cannot expand FEGLIA coverage. *See Hughes v. Goodwin*, 860 F. Supp. 272, 278 (D. Md. 1994). Thus, regardless of how this claim is interpreted, the Court still finds that it lacks jurisdiction.

## V. CONCLUSION

In light of the above analysis, the Court finds plaintiff has not shown that a waiver of sovereign immunity applies here, *see St. Tammany Par.*, 556 F.3d at 315–17, and, thus, the Court does not have jurisdiction to hear her claims.

For these reasons, the Court **grants** the federal defendants' Motion to Dismiss (Doc. 14) and dismisses plaintiff's claims against the United States Census Bureau and the Office of Personnel Management. The Clerk of Court is **directed** to terminate the United States Census Bureau and the Office of Personnel Management as defendants in this case.

In light of this order, it appears the Court may not have subject matter jurisdiction over plaintiff's remaining claims against MetLife.  Thus, the Court **directs** both plaintiff and MetLife to file a brief within **30 days** of the publication date of this order addressing whether the Court has subject matter jurisdiction over the remaining claims.

**IT IS SO ORDERED** this 8th day of January, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa