# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| CARMEN SMITH,<br><br>    Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>    Defendant. | No. 20-CV-2059-CJW-MAR<br><br>**MEMORANDUM OPINION & ORDER** |

_____

This matter is before the Court on parties' cross-motions for summary judgment. On August 20, 2021, plaintiff filed a pro se motion for summary judgment. (Doc. 31). Defendant timely filed its resistance. (Doc. 34). Plaintiff timely filed her pro se reply. (Doc. 39). Also on August 20, 2021, defendant filed a motion for summary judgment. (Doc. 32). Plaintiff timely filed her resistance. (Doc. 33). Defendant timely filed its reply. (Doc. 38).

For the following reasons, both motions for summary judgment are **denied**.

## I.  FACTUAL BACKGROUND

The following facts are taken from plaintiff's complaint. (Doc. 1). Plaintiff's husband Richard Smith ("Richard"), now deceased, worked for the U.S. Census Bureau until his retirement in 2008. (*Id.*, at 2–3). Following his retirement on December 2, 2008,[1] Richard received multiple statements from the Office of Personnel Management

---

[1] Plaintiff includes this fact in her Statement of Undisputed Facts. (Doc. 31-2, at 1). Defendant does not dispute it. (*See* Doc. 35) (not disputing plaintiff's Statement of Undisputed Facts and instead asserting defendant's Additional Undisputed Material Facts). Although defendant mentions Richard's retirement date in its Resistance to plaintiff's Motion for Summary Judgment, (Doc. 34, at 4) (discussing "Decedent's retirement on December 2, 2008"), it does not specifically mention a retirement date in its own Motion for Summary Judgment. (*See generally*

("OPM") explaining that he was eligible for life insurance benefits through defendant Metropolitan Life Insurance Company ("defendant") under the Federal Employee Group Life Insurance Act due to his work with the Census Bureau. (*Id.*, at 2–4). The statements showed that Richard had a total of $60,000 in life insurance coverage: $10,000 in Basic Life coverage, $10,000 in Option A coverage, and $40,000 in Option B coverage. (*Id.*, at 4). Richard paid premiums on the full amount of this coverage. (*Id.*). On December 23, 2018, Richard died. (*Id.*).

On December 26, 2018, plaintiff submitted a claim under Richard's Federal Employee Group Life Insurance ("FEGLI") policy to OPM. (*Id.*). In answer, OPM paid the full amount under the Basic Life and the Option A coverage but paid less than the expected $40,000 in Option B coverage. (*Id.*). Plaintiff inquired with OPM as to why she did not receive the full $40,000 in Option B coverage. (*Id.*, at 5). In response, OPM sent another check for $2,750.95. (*Id.*). Defendant and OPM later clarified that Richard was only eligible for $5,000 in Option B coverage, not $40,000. (*Id.*). Thus, the first check was the proper amount plaintiff was to receive under the policy and the second check was meant to reimburse plaintiff for Richard's overpayment on his premiums. (*Id.*). At plaintiff's request, OPM reviewed this matter twice, but did not change its conclusion that the benefits paid out were correct. (*Id.*).

On August 18, 2020, plaintiff filed her complaint against the Census Bureau, OPM, and defendant before the Court. (*Id.*, at 1). Plaintiff asserted two claims for relief against all defendants. First, plaintiff asserted that "[d]efendants have breached their promise and duty under federal law," apparently the Federal Employee Group Life Insurance Act, to pay out the full $60,000 on Richard's life insurance policy. (*Id.*, at 6). Second, plaintiff asserted that "[a]lternatively, Defendants are equitably estopped and

---

Doc. 32) ("[Richard] retired in December 2008"). OPM's investigation also mentions December 2, 2008, as Richard's retirement date. (Docs. 31-3, at 7; 32-3, at 21).

barred by laches from denying the full life insurance claim." (*Id.*, at 7). On October 7, 2020, defendant filed its answer. (Doc. 10). On October 23, 2020, the Census Bureau and OPM filed their Motion to Dismiss, arguing that dismissal was required under Federal Rule of Civil Procedure 12(b)(1) due to a lack of subject matter jurisdiction. (Doc. 14). The Court granted their motion and dismissed the Census Bureau and OPM. (Doc. 25).

On August 20, 2021, plaintiff and defendant each filed a motion for summary judgment. (Docs. 31 & 32).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v.*

3

*DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

If the *moving* party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence, using any of the materials specified in Rule 56(c), "that would entitle it to a directed verdict if not controverted at trial." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (1993). If the moving party makes this showing, then the nonmoving party has the burden of production to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. *Id*.

If the burden of persuasion at trial would be on the *nonmoving* party, then the party moving for summary judgment may satisfy Rule 56's burden of production in two ways, either by submitting affirmative evidence negating an essential element of the claim, or by demonstrating to the Court that the nonmoving party's evidence is

4

insufficient to establish an essential element of their claim. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018). If the moving party seeks summary judgment on lack of evidence, then the moving party must affirmatively show the absence of evidence. *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994). If the moving party does not satisfy this showing, however, then its motion for summary judgment must be denied, and the Court need not consider whether the nonmoving party has met its ultimate burden of persuasion. *Id.*

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Where the litigants concurrently pursue summary judgment, each summary judgment motion must be evaluated independently to determine whether there exists a genuine dispute of material fact and whether the movant is entitled to judgment as a matter of law. *See, e.g., Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

### III.   DISCUSSION

Employees of the federal government are beneficiaries to FEGLI policies.  5 U.S.C. § 8701.  When an employee dies, OPM must pay to the "surviving" person—that is, the designated beneficiary—the amount of life insurance "in force on [the] employee" at the date of his death.  5 U.S.C. § 8705(a).  If OPM provides an erroneous life insurance policy for an employee, employees and beneficiaries may rely on these erroneous policies by continuing them upon retirement, so long as the error is found after the erroneous insurance and withholdings have been in force for at least two years during the employee's lifetime.  *See* 5 U.S.C. § 8706(h).

This rule is further developed in Title 5, Code of Federal Regulations, Section 870.104.  If the employee is erroneously allowed to "continue insurance into retirement," then the coverage remains in effect if at least two years pass before the error is discovered, during which the premiums have been paid.  5 C.F.R. § 870.104(b).  But if the individual is erroneously enrolled in life insurance "on or after the date [the individual] retires," then the coverage cannot remain in effect.  5 C.F.R. § 870.104(c).

Even so, the purported beneficiary bears the burden of showing she is entitled to the benefits she seeks "by a preponderance of the evidence."  *True v. OPM*, 926 F.2d 1151 (Fed. Cir. 1991).

### A.   *Plaintiff's Motion for Summary Judgment*

Plaintiff is the moving party in her motion for summary judgment and also has the burden of persuasion.  *See id.*  Plaintiff, therefore, has the initial burden of production to show enough initial evidence that she is entitled "to a directed verdict if" the evidence is "not controverted at trial."  *Firemen's Fund Ins.*, 8 F.3d at 1310.  Once plaintiff has met her burden, defendant, as the nonmoving party, must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts that show a genuine issue does indeed exist.

6

Plaintiff asserts she is entitled to summary judgment in her favor because Richard was entitled to $40,000 in Option B life insurance coverage. (Doc. 31-1, at 6–11). First, plaintiff argues that federal law and guidance, namely, the federal government's termination of employee life insurance statute, the FEGLI incontestability regulation, and OPM's FEGLI handbook, all support her recovery even though Richard was not eligible for $40,000 in Option B coverage, because he was enrolled in the erroneous coverage before he retired. (*Id.*). Second, plaintiff argues that OPM's misleading, deceptive, or unfair advertising provision shows Richard's election documents certified his right to the $40,000 Option B coverage. (Doc. 31-1, at 9). Third, plaintiff argues that policy considerations also weigh in her favor. (*Id.*, at 12–13).

In resistance, defendant first argues that federal law and guidance shows Richard was neither eligible for the erroneous coverage nor entitled to it under the FEGLI incontestability regulation because he was already retired when the error occurred. (Doc. 34, at 2–8; 10–15). Defendant also argues that OPM's FEGLI handbook, viewed as a whole, shows Richard was not entitled to the erroneous Option B coverage because he was enrolled in it after he retired. (*Id.*, at 7–8). Second, defendant argues that plaintiff's misleading, deceptive, or unfair advertising argument is unavailing because it would require the Court to ignore the express terms of the FEGLI incontestability regulation. (Doc. 34, at 9). Third, defendant argues that policy considerations are inapplicable here because OPM, not MetLife, determines eligibility and the considerations plaintiff cites apply to ERISA, not FEGLI, benefits. (Doc. 34, at 9–10).[2]

---

[2] Defendant also argues plaintiff cannot establish her estoppel claim. (Doc. 34, at 15–18). The Court, however, does not address this argument because plaintiff does not mention this argument in her motion, (Doc. 31), and plaintiff's resistance to defendant's motion for summary judgment confirms that she no longer asserts a promissory estoppel claim against defendant. (Doc. 33, at 1, 3).

For the following reasons, the Court finds plaintiff does not meet her initial burden of production, because her offered evidence would not be sufficient to meet her burden of persuasion at trial even if it was unchallenged.

### 1. *Federal Law & Guidance*

Plaintiff argues federal law and guidance support a grant of summary judgment in her favor. (Docs. 31-1, at 6–11). First, she argues that the plain language of Title 5, United States Code, Section 8706(h) supports her recovery. (Doc. 31-1, 4–5). Section 8706(h) states:

> The insurance of an employee under a policy purchased under section 8709[3] shall not be invalidated based on a finding that the employee erroneously became insured, or erroneously continues insurance upon retirement . . ., if such finding occurs after the erroneous insurance and applicable withholding have been in force for 2 years during the employee's lifetime.

Second, plaintiff argues that the FEGLI incontestability regulation supports her recovery. (Doc. 31-1, at 5–7), 5 C.F.R. § 870.104. Plaintiff asserts that because Richard was already enrolled in the erroneous coverage when he was an employee, Section 870.104(b) applies and provides his $40,000 coverage was incontestable. (Doc. 31-1, at 5–6, 12). Plaintiff asserts, without citation, that Richard continued his erroneous coverage into retirement. (*Id.*, at 6–7, 11). In a footnote, plaintiff asserts that OPM's April 27, 2009 letter shows the error causing Richard's higher coverage did not occur when Richard switched to using direct remittance coupons to pay his annuity payments, despite OPM's conclusion that it did. (*Id.*, at 3 n.1). Attached to her resistance, plaintiff includes the April 27, 2009 letter, which shows Richard already had $40,000 in Option B coverage. (Doc. 31-3, at 10). But plaintiff does not expressly argue that this letter is evidence that the erroneous coverage occurred before retirement, only that it is evidence

---

[3] Section 8709 provides for OPM's insurance policy benefits. 5 U.S.C. § 8709.

the erroneous coverage occurred before April 27, 2009. Thus, plaintiff presents no evidence that Richard was enrolled before his retirement on December 2, 2008. Finally, plaintiff argues OPM's internal guidance found in its FEGLI handbook shows the FEGLI incontestability regulation applies not only to policy holders who enrolled in an erroneous policy before retirement and for at least two years, but also to those enrolled during their initial period of retirement and for at least two years. (*Id.*, at 7–8).

In response, defendant argues that Richard was not entitled to his erroneous coverage at the $40,000 level because the erroneous enrollment occurred *after* Richard retired. (Doc. 34, at 2–7). As such, defendant argues that Section 870.104(c) of the incontestability regulation applies and prevents plaintiff from being entitled to $40,000 in coverage. (Doc. 34, at 2–3, 14–15). Addressing plaintiff's argument based on OPM's FEGLI handbook, defendant argues that other handbook provisions show enrollment must take place before the date of retirement and the handbook must be construed as a whole. (Doc. 34, at 7–8).

Plaintiff has not shown that the plain language of Section 8706(h) supports a grant of summary judgment. There is no dispute whether life insurance may be continued under conditions determined by OPM. As defendant points out, however, Section 8706(h) applies only to an "employee [who] erroneously became insured, or erroneously continued insurance upon retirement" when "the erroneous insurance and applicable withholdings have been in force for 2 years during the employee's lifetime." (Doc. 34, at 2). Here, the parties do not dispute that the withholdings for Richard's erroneous policy was in force for at least two years. (*See* Docs. 31-1, at 3, 34 at 3, 39, at 1). Instead, as plaintiff's and defendant's arguments evince, the question of whether Richard's erroneous policy was protected by Section 8706(h) turns on when Richard erroneously continued insurance at the $40,000 level of additional Option B coverage "upon retirement." The parties do not contest that if Richard were enrolled in $40,000

9

of Option B coverage before his retirement, his coverage would be incontestable and plaintiff's claim would prevail. Thus, specifically, the dispositive fact is whether Richard was enrolled in the erroneous coverage before he retired. Here, plaintiff's brief for her Motion for Summary Judgment offers no more than an uncited assertion that Richard "continued" the erroneous FEGLI policy into retirement. (Doc. 31-1, at 6–7, 11).

The same fact remains in dispute in the context of the FEGLI incontestability regulation. By arguing that Richard's coverage was erroneous but nevertheless should be honored, plaintiff concedes that Richard was not eligible for $40,000 in life insurance based on his salary. Plaintiff must, however, demonstrate that the FEGLI incontestability regulation applies to Richard's erroneous enrollment. Under the incontestability regulation, an employee who is "erroneously allowed to continue insurance into retirement" may retain that insurance, while an employee "continually enrolled in life insurance on or after the date he or she retires" cannot. 5 C.F.R. 870.104(b)-(c). So, plaintiff must show that Richard enrolled at the $40,000 level of Option B coverage before he retired and was enrolled at least two years before his death. *See* 5 C.F.R. 870.104. As above, the dispositive fact is whether Richard was enrolled in the erroneous coverage before he retired. Again, plaintiff's brief for her Motion for Summary Judgment offers no more than an uncited assertion that Richard "continued" the erroneous insurance policy into retirement. (Doc. 31-1, at 6–7, 11).

Plaintiff's reliance on OPM's internal guidance in the FEGLI handbook is likewise inextricably linked to the question of whether Richard was enrolled at the $40,000 level before he retired. As plaintiff notes, (Doc. 31-1, at 7), the handbook provides that "FEGLI coverage that is acquired erroneously *during the initial period of retirement*" is valid if it was in place for two years before the error was discovered and the annuitant paid the applicable premiums. (Doc. 31-1, at 7) (emphasis added). As defendant notes, however, the material plaintiff cites does not show the whole story. The portion plaintiff

10

quotes begins: "If an employee is erroneously allowed to *continue insurance coverage into retirement* or while on compensation, the coverage will remain in effect." Thus, plaintiff's support for her argument that she is entitled to Richard's erroneous coverage began during the initial period of his retirement is made in the context of coverage that exists before and continues into retirement.

Still, reconciling the FEGLI handbook's language is somewhat puzzling. Generally, as a matter of common sense, an individual is either employed or retired. OPM's "initial period of retirement" term, undefined in the record, asks for something in between the two. Construed in the light most favorable to the defendant as nonmovant, an initial period of retirement might mean the final months of an individual's employment as he prepares to retire. Plaintiff's reliance on the FEGLI handbook does not show that no genuine question of fact exists. At most, this "initial period of retirement" language tweaks plaintiff's question of when the error occurred from whether it occurred before retirement to whether it occurred before or during the initial period of retirement, however that is defined.

Plaintiff's reliance on OPM's Benefits Administration Letters, (Doc. 31-1, at 8), is similarly unavailing. These letters contain examples of how OPM would resolve various issues involving erroneous coverage. (*See id.*). Two examples apply when the error occurred when the covered individual was an employee. (*See id.*). A third example applies when erroneous coverage continues into retirement. (*See id.*). But these letters do not show whether Richard was enrolled in the erroneous coverage before he retired. Nor does plaintiff's evidence of Richard's forms and correspondence, included in her appendix to her motion, conclusively answer whether the erroneous enrollment occurred before Richard retired. For instance, plaintiff asserts that Richard's Option B coverage existed "on or about 11/29/2005," but her source for this information does not show whether the coverage was at the erroneous amount. (Docs. 31-2, at 1, 31-3, at 14).

11

Instead, the form only proves Richard's enrollment in Option B coverage. (Doc. 31-3, at 14). Another form plaintiff offers shows Richard's enrollment in $40,000 in Option B coverage, but is dated September 14, 2009, many months after Richard's retirement in December 2008. Thus, this form is not relevant to whether Richard was enrolled in the erroneous Option B coverage before his retirement. (*See* Doc. 31-3, at 10, 16). And in a third document, in which OPM affirmed the lower Option B coverage, OPM confirmed that the erroneous coverage began when it entered these coupons. (Doc. 31-3, at 7–8). In sum, plaintiff's evidence does not foreclose the possibility that Richard was not enrolled in erroneous Option B coverage until after he retired, as her burden at summary judgment demands.

Thus, plaintiff does not meet her initial burden to show that she was entitled to this relief, because plaintiff's Motion for Summary Judgment does not show by a preponderance of the evidence that Richard was enrolled in the erroneous Option B coverage before he retired.

### 2. *Misleading, Deceptive, or Unfair Advertising*

Plaintiff next suggests that under OPM's "misleading, deceptive, or unfair advertising" provision, Richard's FEGLI booklet, election document, and certificate of insurance certified his right to Option B coverage at the erroneous $40,000 level. (Doc. 31-1, at 9) (discussing 48 C.F.R. 2103.570). As such, plaintiff asserts that the Court may generously interpret the FEGLI benefits in her favor. (*Id.*). In response, defendant argues that plaintiff's argument would require the Court to ignore the express terms of the FEGLI incontestability regulation. (Doc. 34, at 9). Plaintiff did not respond to defendant's arguments in her reply. (Doc. 39).

Under Title 48, Code of Federal Regulations, Section 2103.570(a), "[OPM'S FEGLI] booklet, along with valid election documents, serves as certification of the employee's coverage under the FEGLI Program." Accordingly, the Court construes

12

plaintiff's argument as asserting that Richard's FEGLI materials certify his coverage. This argument, however, fails to address other limitations on FEGLI coverage. Even if Richard's coverage were certified at the $40,000 level, plaintiff concedes that he was enrolled in this level of coverage erroneously. Thus, the FEGLI incontestability regulation would still apply, and its protection would still turn on whether Richard was enrolled in the erroneous coverage before he retired. *See* 5 C.F.R. Section 870.104. As the Court already found, plaintiff did not show that Richard became erroneously insured before his retirement.

### 3. Policy Considerations

Plaintiff next argues that policy considerations weigh in her favor because employee benefits like FEGLI coverage are "ripe for abuse," given the inequities of information between employee and plan providers. (Doc. 31, at 10–13) (discussing *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012)). Plaintiff argues that "a narrow reading of the incontestability clause would create an inequitable result and a precedent that allows OPM and Defendant to effectively usurp 5 C.F.R. 870 § 104(b) and always claim an error occurred after the date of retirement." (Doc. 39, at 3). Defendant argues that plaintiff's arguments are inapposite because first, any policy considerations pertain to policies made by OPM, not defendant, and second, the case on which she relies discusses ERISA offerings, not FEGLI benefits. (Doc. 34, at 9–10). The Court agrees with defendant that plaintiff's policy argument is directed to OPM, not defendant. Contrary to defendant's argument, however, the Court views the differences between ERISA and FEGLI benefits as not strictly relevant to plaintiff's argument that information inequities exist.

Nevertheless, plaintiff's arguments are unavailing. Plaintiff's cited authority is persuasive at best. It is not binding authority on this Court because the opinion was not issued by the Court of Appeals for the Eighth Circuit, this Court's appellate court, or the

13

United States Supreme Court. (Doc. 31-1, at 10) (discussing *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012)). Plaintiff's argument about access to information is her most compelling argument. To raise doubt about OPM's information, as described above, plaintiff pieced together evidence and inferences from various forms and correspondence between Richard and OPM. Because plaintiff does not have access to OPM's system and records, she can only access what Richard saved or OPM provides and build her arguments from that information. This does suggest an inequity of information available to employees versus employers and plan providers, though the Court need not agree with plaintiff's argument that benefit plans are necessarily ripe for abuse. Moreover, information asymmetries exist in every lawsuit. Nevertheless, although the Court gives some credence to plaintiff's implication that information inequities may prevent her from finding out when the erroneous coverage began, plaintiff's burden on her motion for summary judgment is to provide enough evidence to show that she is entitled to judgment as a matter of law. Plaintiff's policy argument does not supply this evidence. Thus, for these reasons, the Court finds plaintiff presents insufficient evidence to show that no genuine issue exists for trial. Plaintiff's motion for summary judgment is denied.

### B. *Defendant's Motion for Summary Judgment*

Defendant asserts it is entitled to summary judgment in its favor.[4] As the moving party in its motion for summary judgment, defendant must inform the Court of the basis for its motion and identify those portions of the record which show that no genuine issue exists for trial. Once defendant has met its burden, plaintiff, as the nonmoving party, must go beyond the pleadings and by depositions, affidavits, or other evidence designate

---

[4] Defendant also argues that it cannot be responsible for promissory estoppel because OPM, not defendant, made the relevant misrepresentations. (Doc. 32-1, at 12–15). Plaintiff, however, states she no longer asserts a promissory estoppel claim against defendant. (Doc. 33, at 1, 3). Thus, the Court does not address this argument.

14

specific facts that show a genuine issue does indeed exist. Specifically, the nonmoving party—plaintiff—has the burden of persuasion to show eligibility, so defendant may satisfy Rule 56's burden of production in two ways, either by submitting affirmative evidence negating an essential element of the claim, or by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of her claim. *Bedford*, 880 F.3d at 996–97. If the moving party seeks summary judgment on lack of evidence, then the moving party must affirmatively show the absence of evidence. *Hanson*, 13 F.3d at 1253. For the following reasons, the Court finds that although defendant's argument shows a lack of dispute in the existing record, plaintiff presents new evidence that shows a genuine issue exists for trial. Thus, defendant's motion for summary judgment cannot succeed.

Defendant argues that plaintiff cannot establish a right to $40,000 in Option B coverage. (Doc. 32-1, at 7–15). First, defendant argues plaintiff cannot establish that Richard was eligible for more than $5,000 in Option B benefits "actually owed under the [Federal Employee Group Life Insurance Act] statutory scheme." (*Id.*, at 8).

Second, defendant argues plaintiff cannot show that Richard was legally entitled to receive the higher FEGLI coverage when he received incorrect information about his benefits and paid the wrong premium. (*Id.*, at 8–10). Defendant relies on a variety of case law purportedly showing that receiving incorrect information and paying the wrong premium is not sufficient to be entitled to greater funds. (*Id.*) (citing *Office of Personnel Management v. Richmond*, 496 U.S. 414, (1990), *Chrobak v. Met. Life Ins. Co.*, 517 F.2d 883, 887 (7th Cir. 1975), *Chanda v. United States Office of Personnel Management*, 841 F. Supp. 432 (D.D.C. 1993), and *Funeral Fin. Sys., v. Met. Life Ins. Co.*, 755 N.E.2d 485 (Ill. App. 2001)).

Third, defendant argues that Richard's erroneous coverage does not fall within the protection of the FEGLI incontestability regulation because Richard was already retired

15

when the error resulting in misstatements and excess premiums occurred, (Doc. 32-1, at 10–12), and the incontestability regulation applies only to employees, not retirees. (Doc. 32, at 11). Defendant's argument relies exclusively on OPM's statements that the data entry error which erroneously changed Richard's coverage happened after Richard retired. (*Id.* at 12).

Defendant fully discharged its initial burden of production to show affirmative evidence that plaintiff was not entitled to legal relief, so the burden of production shifts to plaintiff to call the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party. *Celotex*, 477 U.S. at 324.

Plaintiff does not contest defendant's first argument that Richard was not eligible for more than $5,000 in Option B coverage under the statutory scheme. (Doc. 33, at 3–5). But this is insufficient evidence to grant defendant's motion for summary judgment, because, as described below, plaintiff points to evidence showing that Richard paid the premium for the $40,000 coverage and was erroneously enrolled at that level before retirement, and therefore qualifies for protection under the incontestability regulation.

Plaintiff does dispute defendant's second argument, arguing that although Richard's payments at the wrong premium level did not expand his coverage, they did function as a condition precedent to establishing a statutory right under the FEGLI incontestability regulation. (*Id.*). Specifically, plaintiff distinguishes defendant's proffered precedent. (*Id.*).

The Court agrees that defendant's precedent is unavailing. The Court first notes that the only case that defendant cites which is binding on this Court is *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990). In *Richmond*, OPM denied benefits to an ex-civil servant who received erroneous information about his benefits when he was employed by the Navy. *Id.* at 415–19. The Supreme Court found that the denial was lawful because payments from the Federal Treasury are limited to those authorized by

statute. *Id.*, at 424–26. But in *Richmond*, the plaintiff "point[ed] to no authority in precedent or history for the type of claim he advance[d]." *Id.*, at 434. In *Richmond,* plaintiff's claim was in promissory estoppel. *See id.* at 415–19. Here, plaintiff no longer asserts her promissory estoppel claim. (Doc. 33, at 3). Instead, her claim is that she has a statutory right to Richard's erroneous benefits. (*Id.* at 1) (relying on Title 5, United States Code, Section 8706(h) and the FEGLI incontestability regulation). Thus, the Court agrees with plaintiff that defendant's reliance on *Richmond* is misplaced.

So too is defendant's reliance on the U.S. District Court for the District of Columbia's 1993 decision in *Chanda* misplaced. In *Chanda*, a federal employee's estate was denied an erroneously high FEGLI proceeds because she had failed to submit required medical documentation required for eligibility after being incorrectly told she was eligible. 841 F. Supp. at 433–35. On its face, the facts of *Chanda* are more similar to the facts here than any other case defendant cites. But *Chanda*'s analysis is not persuasive because the FEGLI incontestability regulation was not enacted until 1999. *See* 5 C.F.R. § 870.104. Thus, OPM had not yet clarified when erroneous coverage would be honored under certain circumstances, even when the employee was technically ineligible. Defendant's remaining cases are likewise unhelpful. *See Chrobak v. Met. Life Ins. Co.*, 517 F.2d 883 (7th Cir. 1975) (narrowly construing a statute with no incontestability provision counterpart); *Funeral Fin. Sys., v. Met. Life Ins. Co.*, 755 N.E.2d 485 (Ill. App. 2001) (analyzing claim of promissory estoppel, not statutory right).

Finally, plaintiff disputes defendant's third argument, and argues that Richard is protected by the incontestability regulation because he was either an employee or in the initial period of his retirement when his coverage was erroneously set at the $40,000 level. (Doc. 33, at 6–7). Specifically, plaintiff raises serious questions about OPM's version of events, in which the error causing Richard's higher coverage occurred when Richard switched to using direct remittance coupons to pay his annuity payments. (Doc.

17

33-2, at 3). Plaintiff asserts that: (1) OPM's April 27, 2009 letter suggests that Richard paid for the erroneous Option B coverage before his death, (2) the OPM letter suggests that the switch to direct remittance coupons did not cause the error, and (3) the annuity rate's start date suggests that Richard was enrolled in the erroneous Option B coverage prior to his retirement.

The OPM letter shows that Richard's Option B policy was already set at $40,000 when it was mailed to Richard after his retirement on December 2, 2008. OPM's April 27, 2009 letter references his payment for Additional Optional—that is, Option B— coverage at a $24.28 monthly premium. (Docs. 33-2, at 6; 32-2, at 1–2; 33-1, at 2). It also states that Richard's cost per $1,000 of insurance was $0.607 a month. (Docs. 33-2, at 6; 32-2, at 1–2; 33-1, at 2). So, dividing Richard's premium by $0.607 and then multiplying by $1,000 will show the level of coverage for which Richard was paying. $24.28 divided by $0.607 is 40, and 40 multiplied by $1,000 equals $40,000 in insurance. Thus, the letter shows Richard's Option B was already at the erroneous $40,000 level when it was mailed on April 27, 2009, months after Richard retired on December 2, 2008. Moreover, the letter indicated that OPM believed that the Option B coverage was at $40,000, because it asked Richard to decide how to pay his health and life insurance premiums, including the Option B coverage at the erroneous $40,000 level, because his annuity rate could not cover them. (*Id.*).

The record also questions OPM's assertion that the switch to direct remittance coupons—another method to pay insurance premiums—caused the error that changed the Option B coverage to $40,000. (Docs. 32, at 11; 33, at 3–4, 6). According to OPM's findings following its investigation:

> [Richard] elected to pay the monthly premiums for his life insurance coverage directly to [OPM] by coupons because his annuity was insufficient to cover the premiums. When the direct remittance coupons were

> established for the Option B coverage, it was entered with the incorrect amount of $40,000.00 instead of $5,000.00.

(Doc. 32-3, at 21).

But the April 27, 2009 letter, which informed Richard that his annuities were insufficient, indicates that the switch could not have caused the change to $40,000. It is likely, however, that the letter caused the switch to remittances. It referred to Richard's then-annuity rate as "insufficient to cover the cost of [his] health benefits and life insurance premiums" and requested that Richard select another method of payment or end his coverage. (Doc. 33-2, at 6). The record then indicates that Richard switched to remittances to pay the premiums. But as discussed above, the rates provided by the letter indicate that Richard was already enrolled in the erroneous Option B coverage at the time of the April 27, 2009 letter, before any switch occurred. Thus, the letter's plain language stating the coverage levels and premiums and OPM's request for a new method of payment both support that Richard had an erroneous $40,000 in Option B coverage on April 27, 2009, after his retirement.

Specifically, the April 27, 2009 letter indicates that Richard's current annuity rate began on August 2, 2008. (Doc 33-2, at 6) ("Your monthly annuity rate is $14.00 commencing on August 2, 2008."). Given the letter's context listing all of Richard's health and FEGLI benefits and its failure to attribute the annuity rate to any specific benefits, in the light most favorable to the plaintiff as nonmovant, the Court finds the annuity rate applies to all benefits listed. Accordingly, the Court finds that the annuity rate began on August 2, 2008, and applied to Richard's erroneous Option B coverage, before Richard retired on December 2, 2008. Although plaintiff's evidence does not solve the question of when Richard's coverage was changed from $5,000 to $40,000, it shows the erroneous coverage may have existed before his retirement. And it further undermines OPM's version of events, on which defendant's argument relies.

19

To succeed in its motion for summary judgment, defendant must show that no genuine dispute exists that Richard was enrolled in erroneous Option B coverage at the $40,000 level after his retirement December 2, 2008. As explained in the Court's discussion of plaintiff's Motion for Summary Judgment, this fact is material because of its dispositive nature. Here, defendant's argument rests squarely on OPM's testimony, (Doc. 32-1, at 10–12), which plaintiff's evidence challenges. Accordingly, defendant cannot show that no genuine dispute exists as to whether OPM enrolled Richard in the erroneous Option B coverage after his retirement.

Thus, the Court finds a genuine dispute of material fact exists. Defendant's motion for summary judgment is denied.

## IV. CONCLUSION

For these reasons, plaintiff's and defendant's motions for summary judgment, (Docs. 31 & 32), are **denied.**

**IT IS SO ORDERED** this 25th day of October, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa